# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KATHRINE L. ETHRIDGE, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| JO ANNE B. BARNHART, | § | **SA-05-CA-0736 OG (NN)** |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Hon. Orlando Garcia**
      **United States District Judge**

## I. Introduction

Plaintiff Katherine L. Ethridge seeks review and reversal of the administrative denial of her application for Disability Insurance Benefits ("DIB") by the Administrative Law Judge ("ALJ") on April 22, 2002.[1]  Plaintiff contends that ALJ Bernard J. McKay's conclusion that plaintiff retained the residual functional capacity ("RFC") to perform work available in the local and national economies is not supported by substantial evidence of the record.  Specifically, plaintiff contends that the ALJ failed to properly consider the evidence of her mental and physical impairments and failed to articulate legitimate reasons for discrediting the opinions of evaluating physicians.  For these reasons, plaintiff requests that the court reverse, remand and order the entry of a finding of disability, or, in the alternative, remand the case for proper

---

[1] Docket Entries 1, 9, 11.  **See also** Administrative Transcript ("Transcript") at 17-25.

development.

After considering plaintiff's brief in support of her complaint,[2] defendant's brief in support of the Commissioner's decision,[3] plaintiff's reply brief,[4] the transcript of the Social Security Administration ("SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, it is my recommendation that plaintiff's request for relief be **DENIED**.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. Jurisdiction

The District Court has jurisdiction to review the final decision of the Commissioner of Social Security as provided by 42 U.S.C. § 405(g).

## III. Administrative Proceedings

Based on the record in this case, plaintiff fully exhausted her administrative remedies prior to filing this action in federal court.  Plaintiff filed an application for benefits on September

---

[2] Docket Entry 9.  Plaintiff identified this document as a memorandum in support of a motion for summary judgment.

[3] Docket Entry 10.

[4] Docket Entry 11.

3, 1998,[5] alleging disability beginning August 25, 1997.[6]  The Commissioner initially denied the

application on October 6, 1998,[7] and denied her request for reconsideration on January 6, 1999.[8]

Plaintiff requested a hearing before an ALJ,[9] and ALJ Massey held an initial hearing on

February 15, 2000, in San Antonio, Texas.[10]  Margaret M. Maisel represented plaintiff at the

hearing.[11]

After hearing plaintiff's testimony and in light of the medical record, the ALJ concluded

that a neurological examination followed by a psychological examination of the plaintiff was

necessary to provide a complete record upon which to make a disability determination.[12]  At the

ALJ's direction, Steven F. Hoffman, M.D., performed a neurological examination of plaintiff on

March 21, 2000,[13] and Bradford I. Brunson, Ph.D., performed a psychological evaluation and

testing of plaintiff on May 9, 2000.[14]

---

[5] Plaintiff's application bears the date of September 3, 1998, Transcript at 84.  ALJ Massey's decision and the Disability Determination and Transmission document also indicate the September 3, 1998, filing date, Transcript at 32 and 27 respectively.  However, ALJ McKay's decision states that her application was filed on August 5, 1998, Transcript at 17, and a Leads/Protective Filing Worksheet is dated August 5, 1998, Transcript at 83.  Plaintiff's brief states that she filed for benefits on August 3, 1998, Docket Entry 9 at 2.  The record of the initial hearing places the date of the protective filing on August 18, 1998, Transcript at 266.

[6] Transcript at 84.

[7] Transcript at 41-45.

[8] Transcript at 48-51.

[9] Transcript at 52.

[10] Transcript at 261.

[11] Transcript at 258.

[12] Transcript at 281.

[13] Transcript at 189-195.

[14] Transcript at 176-188.

ALJ Massey conducted a supplemental hearing on September 13, 2000.[15]  Margaret M. Maisel represented plaintiff.  At the administrative hearing, the ALJ heard testimony from plaintiff, medical expert (ME) Dr. Joe Berry, and vocational expert (VE) Bill C. Brown.[16]

On November 22, 2000, ALJ Massey issued her decision in which she concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[17]  Specifically, ALJ Massey found that plaintiff retained the RFC to perform her past relevant work as an upholstery assistant and a parts puller.[18]

After receiving the ALJ's unfavorable decision, plaintiff requested review of the hearing decision.[19]  On May 18, 2001, the Appeals Council vacated the hearing decision and remanded the case to the ALJ.[20]  The Appeals Council instructed the ALJ to (1) obtain additional evidence concerning plaintiff's musculoskeletal impairments in accordance with the regulations concerning consultative examinations and existing medical evidence, (2) further evaluate plaintiff's subjective complaints and provide rationale for the evaluation, (3) reconsider plaintiff's RFC providing rationale with specific references to the record to support the assessed limitations and evaluate the treating, examining, and nonexamining opinions pursuant to 20 C.F.R. § 404.1527 and social security rulings ("SSR") 96-2p, 96-5p, and 96-6p, explaining the weight given to each opinion, and (4) if warranted, obtain supplemental evidence from a

---

[15] Transcript at 286.

[16] Transcript at 288, 59, and 58.

[17] Transcript at 32-40.

[18] Transcript at 39, ¶ 7 at 40.

[19] Transcript at 29 and 64, respectively.

[20] Transcript at  71-72.

vocational expert to clarify the effect of the RFC on plaintiff's occupational base, using hypothetical questions and incorporating all the limitations established by the record.

On December 12, 2001, ALJ Bernard McKay conducted a third administrative hearing. Margaret Maisel represented plaintiff.  The ALJ heard testimony from plaintiff and VE Jesus Duarte. [21]

Plaintiff, who was forty-five (45) years of age at the December 2001 hearing, provided the following testimony over the course of the three hearings.  At the initial hearing, plaintiff lived with her husband and two sons, ages nineteen (19) and eighteen (18), in a mobile home.[22]  By 2001, she and her husband were living in his "boss's home."  The electricity had been disconnected at their home, but plaintiff stated that they continued to pay rent.[23]  When asked about her education level, plaintiff testified that she "went through high school," but did not graduate.  Later, she earned a GED diploma and took a management course that would give her college credits if she enrolled in college.[24]  Plaintiff testified that she could read and write English and was right-handed.[25]

Plaintiff 's employment history included experience in the fast food industry, babysitting, bartending, working as a waitress, and working on airplanes.[26]  Plaintiff testified that she worked

---

[21] Transcript at 318.

[22] Transcript at 268.

[23] Transcript at 330.

[24] Transcript at 268.

[25] Transcript at 268, 337.

[26] Transcript at 325.

her way up to an assistant manager position with the Arby's restaurant chain.[27]  She left Arby's to

take a position at an auto parts warehouse operating a computer and pulling parts for customers.[28]

Her last job was refurbishing the interiors of airplanes.  In that job, she helped remove the old

headliners, curtains, seats, and carpets, then replaced them with new furnishings.[29]

While working as an airplane upholsterer, plaintiff sustained the injury that precipitated

her disability claim.  Plaintiff fell as she was exiting an airplane, hit the steps, and hit a box on

the tarmac.[30]  She sustained a laceration and a huge bruise that covered three-fourths of her

back.[31]  Plaintiff claimed that she "never really recovered from it."[32]  According to plaintiff, her

employer, who did not have worker compensation insurance, initially discouraged her from going

to a doctor for treatment.  Her employer subsequently paid for three doctor appointments, but

became angry at her lack of improvement and did not pay for any additional treatment.[33]

When asked about her impairments, plaintiff complained of pain and numbness in her

hands.  She had difficulty moving and lifting objects.[34]  Plaintiff explained that she had problems

with her balance and had a fear of falling.[35]  She walked with the aid of a cane prescribed by her

---

[27] Transcript at 269.

[28] Transcript at 326.

[29] Transcript at 327.

[30] **Id.**

[31] Transcript at 270.

[32] Transcript at 327.

[33] Transcript at 327-328.

[34] Transcript at 328, 341.

[35] Transcript at 273.

doctor.[36]  She testified that she had difficulty sitting for extended periods.[37]  Plaintiff also

complained of migraine headaches accompanied by severe pain and nausea, difficulty sleeping,

and depression.[32]

Plaintiff described her daily activities as normally reading and watching television.  She

had help cooking and doing housework.  Sometimes friends would visit her and help with the

household chores.[33]  Plaintiff stated that she has a valid driver license, but no longer drives a

vehicle on the advice of her doctor.[34]

At the September 2000 hearing, ME Berry testified concerning plaintiff's impairment.

He reviewed plaintiff's medical records including the ALJ ordered neurological and

psychological evaluations.  The medical expert noted that the evaluation did not identify any

specific cause for plaintiff's discomfort, and the neurologist called her condition chronic pain

syndrome.[35]   He further noted that plaintiff's psychological evaluation yielded a finding of

moderately impaired attention and concentration skills along with a GAF of 40.  ME Berry

opined that plaintiff clearly had symptoms fitting the A portion of Listing 12.04, Affective

disorders.  However, he found no evidence of marked restrictions of daily activities, and

determined that she did not meet the requirements of Listing 12.04.[36]  ME Berry also noted a

---

[36] Transcript at 278-279.

[37] Transcript at 342.

[32] Transcript at 279-280.

[33] Transcript at 275, 331.

[34] Transcript at 269.

[35] Transcript at 295.

[36] Transcript at 296.

comment by a physician's assistant ("PA") that labeled plaintiff as "highly dramatic, even histrionic in her presentation of pain with even small movements or light touch to various muscle groups, often in no known relationship to muscle groups being tested."[37]  ME Berry cautioned the ALJ concerning the weight to be given to a PA's opinion, stating that some are good and others are marginal.[38]

VE Marnan also testified at the September 2000 hearing.  He described plaintiff's past relevant work as upholstery assistant - medium exertion, skilled; auto parts puller - light exertion, skilled; assistant manager at a fast food restaurant - light exertion, skilled; and dancer - medium exertion, skilled.[39]  VE Marnan did not offer an opinion about plaintiff's ability to work.

At the December 2001 hearing, VE Duarte testified concerning plaintiff's ability to obtain and maintain employment.  ALJ McKay propounded a hypothetical individual of plaintiff's age, education, and work history (primarily in the fast food industry, in an auto parts warehouse, and doing airplane upholstery).  He expressly disregarded Dr. Hoffman's limitation on lifting, stating that he did not accept that Dr. Hoffman intended all lifting to be precluded.[40]  The ALJ included limitations of lifting no more than ten pounds, sitting up to six hours, and standing up to two hours with the standing and walking activities allowing for the use of a cane.  The ALJ limited as very infrequent the requirements of climbing, balancing, stooping, crouching, kneeling, and crawling, and added that the individual should avoid working around heights or dangerous

---

[37] Transcript at 296, 197.

[38] Transcript at 296.

[39] Transcript at 313.

[40] Transcript at 344.

machinery.[41]  VE Duarte opined that such an individual would be able to perform at a sedentary, unskilled level with the option to sit or stand.  Positions at this level included cashier, information clerk, and telephone quotation clerk.[42]

On April 22, 2002, ALJ McKay issued his decision in which he concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through December 31, 1999, the last date plaintiff was insured.[43]  After receiving notice of the ALJ's unfavorable decision, plaintiff requested review of the hearing and decision on June 11, 2002.[44]  On June 10, 2005, the Appeals Council concluded that there was no reason under its rules to review the ALJ's decision, and denied plaintiff's request for review.[45]  Plaintiff commenced the instant action in this court on August 3, 2005.[46]

## IV.  Issue Presented

> Is the ALJ's decision that plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, supported by substantial evidence and does the decision comport with relevant legal standards?

## V.  Analysis

**A. Standard of Review**

---

[41] Transcript at 346.

[42] Transcript at 346-347.

[43] Transcript at 17-25.

[44] Transcript at 14 and 13, respectively.

[45] Transcript at 9.

[46] Docket Entry 1.

In reviewing the Commissioner's decision denying disability insurance benefits, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[47]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[48] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[49]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[50]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[51]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[52]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

---

[47] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[48] **Villa v. Sullivan**, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

[49] **Abshire v. Bowen**, 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[50] **Martinez**, 64 F.3d at 173.

[51] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **see also Villa**, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[52] **Martinez**, 64 F.3d at 174.

education and work experience.[53]

### 1. Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not reached

retirement age, has filed an application for benefits, and is under a disability is entitled to receive

disability insurance benefits.[54]  The term "disabled" or "disability" means the inability to "engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months."[55]  A claimant shall be determined to

be disabled only if his or her physical or mental impairment or impairments are so severe that he

or she is unable to not only do his or her previous work, but cannot, considering his or her age,

education, and work experience, participate in any other kind of substantial gainful work which

exists in significant numbers in the national economy, regardless of whether such work exists in

the area in which the claimant lives, whether a specific job vacancy exists, or whether the

claimant would be hired if he or she applied for work.[56]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be

evaluated according to a five-step process.[57]  A finding that a claimant is disabled or not disabled

---

[53] **Id.**

[54]  42 U.S.C. § 423(a)(1).

[55] 42 U.S.C. § 1382c(a)(3)(A).

[56] 42 U.S.C. § 1382c(a)(3)(B).

[57] 20 C.F.R. §§ 404.1520 and 416.920.

11

at any point in the process is conclusive and terminates the Commissioner's analysis.[58]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[59]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[60]  The second step involves determining whether the claimant's impairment is severe.[61]  If it is not severe, the claimant is deemed not disabled.[62]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[63]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[64]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his or her past work.[65]  If the claimant is still able to do his or her past work, the claimant is not disabled.[66]  If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[67]  If the claimant

---

[58] **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995).

[59] 20 C.F.R. §§ 404.1520 and 416.920.

[60] **Id.**

[61] **Id.**

[62] **Id.**

[63] **Id.**

[64] **Id.**

[65] **Id.**

[66] **Id.**

[67] **Id.**

cannot do other work, he or she will be found disabled.  The claimant bears the burden of proof

at the first four steps of the sequential analysis.[68]  Once the claimant has shown that he or she is

unable to perform his or her previous work, the burden shifts to the Commissioner to show that

there is other substantial gainful employment available that the claimant is not only physically

able to perform, but also, taking into account her exertional and nonexertional limitations, able to

maintain for a significant period of time.[69]  If the Commissioner adequately points to potential

alternative employment, the burden shifts back to the claimant to prove that he or she is unable to

perform the alternative work.[70]

**B. Findings and Conclusions of the ALJ**

In the instant case, ALJ McKay reached his decision at step five of the evaluation process.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the

alleged onset date of her disability.[71]  The ALJ then concluded at steps two and three that plaintiff

had an impairment or combination of impairments (chronic pain syndrome with low back pain

and some hand pain) which were severe,[72] but did not meet or medically equal a listed

impairment in Appendix 1, Subpart P, Regulation No. 4.[73]  At step four, the ALJ found that

---

[68] **Leggett,** 67 F.3d at 564.

[69] **Watson  v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

[70] **Anderson v. Sullivan**, 887 F.2d 630, 632-33 (5th Cir. 1989).

[71] Transcript at 19, ¶ 2 at 24.

[72] Transcript at 21, ¶ 3 at 24.

[73] Transcript at 21, ¶ 4 at 24; **see also** 20 C.F.R. Pt.  404, Subpt. P, App. 1 (containing the list of impairments).

plaintiff could not perform any of her past relevant work.[74]  However, plaintiff retained the

residual functional capacity to perform a significant range of light work.[75]  At step five, the ALJ

held that given plaintiff's age (defined as a younger individual),[76] education (high school

equivalent education),[77] and exertional limitations,[78] plaintiff could perform work as a cashier, an

information clerk, and a telephone quotation clerk.[79]  Based on the foregoing, ALJ McKay

concluded that plaintiff was not under a disability through December 31, 1999, plaintiff's last

insured date.[80]

**C. Plaintiff's Allegations of Error**

Plaintiff claims that the ALJ erred in determining that plaintiff was not under a disability

as defined by the Act through the last date that she was insured for benefits.  She contends that

the determination was not supported by substantial evidence.  In particular, plaintiff contends that

(1) contrary to the ALJ's finding, the record contains objective evidence of her mental disorder

through the last date she was insured, (2) the ALJ failed to acknowledge and provide reasons for

failing to credit Dr. Brunson's determination of significant mental limitations, and (3) the ALJ

failed to provide reasons for discrediting Dr. Hoffman's consultative opinion.  Furthermore,

plaintiff argues that the ALJ erred as a matter of law by failing to properly analyze plaintiff's

---

[74]  Transcript at 22-23, ¶ 8 at 25.

[75] Transcript at 23, ¶ 11 at 25.

[76] Transcript at 23, ¶ 9 at 25.

[77] Transcript at 23, ¶ 10 at 25.

[78] Transcript at 23, ¶ 12 at 25.

[79] Transcript at 24, ¶ 12 at 25.

[80] Transcript at 18, 24, ¶ 13 at 25.

mental illness as provided by the regulations.

**1. Did the ALJ properly assess plaintiff's mental illness limitations?**

Plaintiff's first two points of error address the ALJ's determination that plaintiff did not have a severe mental impairment at step two of the sequential analysis.  She contends that the ALJ did not consider all of the medical evidence in the record or failed to give proper weight to the evidence in contravention of social security regulations and applicable Fifth Circuit case authority.  In particular, she claims that the ALJ erred by finding that the record contained no objective evidence of mental impairment prior to December 31, 1999, the last date she was insured for benefits.  Plaintiff further argues that the ALJ failed to acknowledge and give reasons for not giving controlling weight to Dr. Brunson's opinion that plaintiff had significant mental limitations prior to the last date insured.

Defendant responds that all of the evidence was properly considered and weighed according to the regulations.  Consequently, the ALJ's decision is based on substantial evidence.

The social security regulations place the burden of producing evidence proving disability on the individual claiming benefits.[81]  The claimant must furnish medical and other evidence to enable the Commissioner to make a determination of whether the claimant is disabled.  The Commissioner will only consider impairments that the claimant says he or she has, or about which the Commissioner receives evidence.[82]

When the ALJ assesses the oral and written evidence provided by various medical

---

[81] 20 C.F.R. § 404.1512(a); **see also** 42 U.S.C. § 405(a) (granting the Commissioner of Social Security the authority to promulgate rules and regulations and establish procedures to concerning the extent of the proofs and evidence to establish the right to benefits under the Act).

[82] 20 C.F.R. § 404.1512(a).

professionals, a treating physician's opinion is entitled to more weight than the opinion of a

consulting physician who has never examined the claimant or has only examined the claimant

once.[83]  However, the ALJ may freely "reject the opinion of any physician when the evidence

supports a contrary conclusion,"[84] provided the ALJ has good cause for so doing.[85]

> [W]hen good cause is shown, less weight, little weight, or even no
> weight may be given to the physician's testimony.  The good cause
> exceptions we have recognized include disregarding statements
> that are brief and conclusory, not supported by medically
> acceptable clinical laboratory diagnostic techniques, or otherwise
> unsupported by the evidence.[86]

Despite the weight given to a treating physician's opinion, the ALJ must evaluate every

medical opinion received.[87]  The ALJ may not pick and choose from the record only the evidence

which supports his or her position,[88] nor reject a medical opinion without giving an explanation

for doing so.[89]

### a. Objective medical evidence in the record.

In this case, the ALJ properly determined that the record did not contain objective

evidence of mental impairment prior to December 31, 1999.  Objective medical evidence

---

[83] **Bowman v. Heckler**, 706 F.2d 564, 567 n.3 (5th Cir. 1983) (citing **Oldham v. Schweiker**, 660 F.2d 1078, 1084 (5th Cir.1981); **Warncke v. Harris**, 619 F.2d 412, 416 (5th Cir.1980); **Strickland v. Harris**, 615 F.2d 1103, 1109-1110 (5th Cir.1980); **Smith v. Schweiker**, 646 F.2d 1075, 1081 (5th Cir.1981); **Williams v. Finch**, 440 F.2d 613, 616-17 and n. 6 (5th Cir.1971)).

[84] **Oldham**, 660 F.2d at 1084.

[85] **Greenspan v. Shalala**, 38 F.3d 232, 237 (5th Cir. 1994).

[86] **Greenspan**, 38 F.3d at 237 (citing **Scott v. Heckler**, 770 F.2d 482, 485 (5th Cir. 1985)).

[87] 20 C.F.R. § 404.1527(d).

[88] **Loza v. Apfel**, 219 F.3d 378, 394 (5th Cir. 2000).

[89] **Id.** at 395.

16

consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c).[90]

The regulation defines "signs" as

> anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated,[91]

and defines "laboratory findings" as

> anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.[92]

Plaintiff avers that the diagnostic evaluation performed at the Hill Country Community MHMR Center dated February 14, 2000, provides objective evidence of her mental impairment. However, the cited portion of the record[93] does not contain any evidence of signs or laboratory tests.  Instead, the "History of Present Illness" contains a narrative by the claimant of her alleged history of past symptoms and treatments of mental illness.

The narrative states that "she describes" her depression after her third child was born, and

---

[90] 20 C.F.R. § 404.1512.

[91] 20 C.F.R. § 404.1528(b).

[92] 20 C.F.R. § 404.1528(c).

[93] Docket Entry 9 at 8 citing Transcript at 203, 205, 206.

quotes her as saying "thought I was angry, the doc said I was depressed."[94]  The narrative

explains that "she states that from about 1984 she began having 'strange attacks.'"[95]  The "Past

History" portion of the evaluation contains a record of plaintiff's statements to the examiner.  It

contains the same identifying language that "she stated," "she states" and "she said."[96]

The "Affect" portion of the MHMR diagnostic evaluation includes the interviewer's[97]

observation that plaintiff did not show much emotion while she was being interviewed and

describing the reported events.[98]  However, the evaluation does not identify this observation as a

specific psychological abnormality of mood, behavior, thought, memory, orientation,

development, or perception that would rise to the level of an objective medical sign of mental

illness.  Consequently, the cited portion of the record relied upon by plaintiff does not constitute

objective medical evidence as defined by the regulations.

Likewise, plaintiff's testimony at the administrative hearings concerning her impairment

and statements by her attorney concerning plaintiff's access to healthcare[99] do not constitute

objective medical evidence as defined by the regulations.  There is evidence in the record

showing a prescription for Xanax,[100] but no explanation stating the purpose of the prescription.

---

[94] Transcript at 203.

[95] **Id.**

[96] Transcript at 205.

[97] The signature on the record is difficult to read, but is followed by "RN CS," so it is not clear from the record if the interviewer was a psychologist or a registered nurse.

[98] Transcript at 206.

[99] Docket Entry 11 at 9 citing Transcript at 272, 267.

[100] Transcript at 157.

**b. Dr. Brunson's evaluation.**

Plaintiff next contends that the ALJ failed to acknowledge and provide reasons for failing to credit Dr. Brunson's determination of significant mental limitations. She notes that the Dr. Brunson diagnosed her with a mood disorder, anxiety disorder and assigned her a current Global Assessment of Functioning ("GAF") of 40 with a highest GAF in the last year of 40, and that ALJ Massey concluded in her November 2000 decision that plaintiff suffered from a severe mental impairment prior to the expiration of her insured status. Plaintiff claims that ALJ failed to properly consider and weigh Dr. Brunson's opinion and explain why he did not adopt the opinion and find that plaintiff suffered from a severe mental impairment.

As explained above, an ALJ must consider every medical opinion and explain his or her reason for rejecting an opinion. In this case, the ALJ thoroughly considered all the medical evidence in the record. He reviewed Dr. Brunson's consultative psychological evaluation of plaintiff performed May 9, 2000.[101] ALJ McKay expressly noted that Dr. Brunson diagnosed plaintiff with a mood disorder due to general medical condition with major depressive-like episode and an anxiety disorder due to general medical condition with generalized anxiety, and also a major depressive disorder, and dysthymic disorder, late onset. He further noted that Dr. Brunson assigned plaintiff a GAF of 40, defined as some impairment in reality testing or communication.[102]

ALJ McKay then explained his consideration of the evidence.

There is no record evidence that supports a diagnosis of these

---

[101] Transcript at 20.

[102] **Id.**

19

disorders until at least several months after her date last insured of December 31, 1999.  Medical records from 1997 through 1999 do not show complaints of depression or other mental disorder or a referral for such disorder.  The neurological examination performed in March, 2000, showed a normal mental status examination.  Other than the psychological consultative evaluation in May, 2000, it does not appear that the claimant sought psychiatric help after her alleged onset date until only days before her Social Security hearing in September 2000.  The undersigned must conclude that there is no objective evidence documenting a medically determinable mental disorder through the claimant's date last insured.[103]

The ALJ's explanation is clear and supported by substantial evidence in the record.  The ALJ acknowledged Dr. Brunson's diagnosis of plaintiff's mental impairment and the psychologist's determination that plaintiff had a GAF of 40,[104] but explained that Dr. Brunson's evaluation of plaintiff did not occur until after the expiration of her insured status.  While Dr. Brunson's assignment of a current GAF of 40 is supported by the objective evidence of the doctor's observations and testing, his report does not state upon what information he based his determination that plaintiff's highest GAF in the last year was 40.[105]  Therefore, the "last year GAF" does not contradict the ALJ's finding that there is no objective evidence of mental impairment prior to December 31, 1999.

ALJ McKay further noted that plaintiff's neurological examination performed in March 2000 showed a normal mental status, and plaintiff did not seek psychiatric assistance until just days before her first administrative hearing belying her contention of persistent mental illness predating her last date insured.  He explained that all of these factors led him to conclude that

---

[103] Transcript at 21.

[104] Transcript at 20.

[105]Transcript at 177-186,

there was no objective medical evidence documenting plaintiff's mental disorder through December 31, 1999, her last insured date.[106]  Accordingly, the ALJ sufficiently explained his treatment of Dr. Brunson's diagnosis.

**2. Did the ALJ fail to engage in an appropriate analysis of plaintiff's mental illness as required by the regulations?**

Plaintiff next claims that the ALJ failed to discuss or make findings required by 20 C.F.R. § 404.1520a.  She argues that regulation mandates that the ALJ follow the specific procedure for evaluating mental impairments.

Plaintiff is correct that § 404.1520a specifies the procedure that must be followed to determine the severity of mental impairment.  However, the regulation expressly states:

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s) . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.[107]

In this case, as discussed above, the ALJ properly considered all the evidence in the record and determined that plaintiff did not carry her burden to prove that she had a severe mental impairment on December 31, 1999, the last date that she was insured for benefits. Because the ALJ found that plaintiff did not have a medically determinable mental impairment on the last date she was insured for benefits, he was not required by the regulation to proceed further with the analysis.

---

[106] Transcript at 21.

[107] 20 C.F.R. § 404.1520a(b)(1).

**3. Did the ALJ provide sufficient reasons for failing to give controlling weight to Dr. Hoffman's assessment of plaintiff's functional limitations?**

Plaintiff's final assignment of error is that the ALJ failed to adequately explain his reasons for not accepting all of the functional limitations assessed by Dr. Hoffman in his neurological examination.  She contends that the ALJ misinterpreted Dr. Hoffman's limitation on plaintiff's ability to carry as a limitation on her ability to lift.  Furthermore, plaintiff argues that her daily activities are not inconsistent with the carrying limitations determined by Dr. Hoffman, and therefore, the ALJ's RFC determination is irreparably flawed.

As explained above, the ALJ is not required to accept any medical opinion as controlling. If he or she does not give a treating source's opinion controlling weight, the ALJ must consider various factors in deciding the weight given to each additional medical opinion.[108]  Those factors are: (1) the examining relationship (the ALJ should generally give more weight to a source who examined the claimant);[109] (2) the treatment relationship (the ALJ should generally give more weight to a source who treated claimant),[110] including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s);[111] (3) the supportability of the opinion (the ALJ should give greater weight to the source who provides more relevant evidence to support the opinion);[112] (4) consistency (the ALJ should give greater weight to

---

[108] **Id**.

[109] 20 C.F.R. § 404.1527(d)(1).

[110] 20 C.F.R. § 404.1527(d)(2).

[111] 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

[112] 20 C.F.R. § 404.1527(d)(3).

opinions which are consistent with the record as a whole);[113] (5) specialization (the ALJ should generally give greater weight to the opinion of a specialist);[114] and (6) any other factors which "tend to support or contradict the opinion."[115]

Furthermore, Social Security Ruling ("SSR") 96-8p provides instruction in evaluating medical opinions to determine a claimant's RFC.

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.[116]

In this case, the ALJ properly evaluated the consultative neurological opinion and explained why he did not give it controlling weight. The ALJ noted that Dr. Hoffman performed a consultative examination in March 2000, nearly three months after her insured status expired. At the examination, plaintiff appeared well-groomed and in no acute distress, and presented no obvious abnormalities.[117] Her back was not particularly tender and although plaintiff complained of tenderness bilaterally, the neurologist did not palpate spasm. There was "give" to all muscles in the upper and lower extremities and plaintiff complained of pain. Plaintiff used a cane and walked stooped forward; her gait was abnormal.[118]

---

[113] 20 C.F.R. § 404.1527(d)(4).

[114] 20 C.F.R. § 404.1527(d)(5); **see also** **Moore v. Sullivan**, 919 F.2d 901, 905 (5th Cir. 1990) (describing the weight given to physicians' opinions and noting that specialists' opinions are entitled to more weight than non-specialists' opinions).

[115] 20 C.F.R. § 404.1527(d)(6).

[116] SSR 96-8p, 1996 WL 374184, at *7.

[117] Transcript at 20.

[118] **Id.**

Dr. Hoffman diagnosed plaintiff as having chronic pain syndrome, involving her back and neck.  However, he did not find a focal neurological defect.  Additionally, a cervical spine X-ray did not note significant degenerative changes, and her spinal alignment was normal with no swelling.[119]

The ALJ noted that Dr. Hoffman opined that plaintiff's pain

> precluded carrying, that she had standing/walking limitations of an unstated nature, could sit less than 6 hours in an 8 hour workday; could never climb, balance, stoop, crouch, kneel, or crawl, had limited pushing/pulling, and had environmental limitations involving heights, and moving machinery.[120]

The ALJ explained that he considered Dr. Hoffman's opinion, but expressly noted that the examination failed to show a focal neurological defect.[121]  Furthermore, claimant testified that she could do some household chores, and the ALJ found these activities were inconsistent with being unable to lift any weight.[122]  Consequently, the ALJ did not give controlling weight to Dr. Hoffman's opinion and find that plaintiff was as functionally limited as Dr. Hoffman described.

While plaintiff is correct that Dr. Hoffman's handwritten assessment literally states that plaintiff's "pain precludes carrying," the actual assessment question asks, "Is LIFTING/ CARRYING affected?"[123]  Therefore, the ALJ's use of both lifting and carrying in describing Dr. Hoffman's assessed limitation is insignificant.

---

[119] **Id.**

[120] Transcript at 20, 194-195.

[121] Transcript at 20.

[122] **Id.**

[123] Transcript at 194.

Later in the decision, the ALJ noted that plaintiff had a medically determinable impairment that could cause some pain and range of motion difficulty.[124]  However, he found that the evidence did not support a finding of as severe an impairment as plaintiff claimed.  The ALJ explained that the medical expert at the September hearing stated that there was no evidence in the record to support plaintiff's claim of inability to walk.[125]  The ALJ also noted that the PA raised the issue of possible factitious pain and histrionic presentation of pain when plaintiff sought forms to present at her disability hearing.[126]  The ALJ weighed this evidence in determining that plaintiff's claims concerning her pain were not wholly credible.[127]  This credibility finding additionally explains the ALJ's reasons for not fully crediting Dr. Hoffman's opinion concerning plaintiff's limitations.

In conclusion, the ALJ appropriately considered and weighed Dr. Hoffman's opinion.  He adequately explained his reasons for not giving the opinion controlling weight in determining plaintiff's RFC.

## VI.  Recommendation

Based on the foregoing, I recommend that plaintiff's request for relief be **DENIED**, her complaint (Docket Entry 3) **DISMISSED**, and the decision of the Commissioner **AFFIRMED**.

## VII. Instructions for Service and Notice of Right to Object/Appeal

---

[124] Transcript at 22.

[125] **Id.**

[126] **Id.**

[127] **Id.**

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[128]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[129]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[130]

**SIGNED** on August 8, 2006.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[128] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[129] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[130] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

26